IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JEFFREY HIMSL,<br><br>               Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., CVS RX SERVICES, INC., CVS HEALTH CORPORATION, CVS CAREMARK CORPORATION, CAREMARK, LLC, RxAMERICA SEVERANCE PLAN, CVS HEALTH SEVERANCE PLAN FOR NON STORE EMPLOYEES, CVS CORPORATION INCENTIVE COMPENSATION PLAN and JOHN DOES I-V,<br><br>               Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:16-cv-1142 |

Before the court is Defendants' Motion for Summary Judgment. (Dkt. No. 45.) The Motion has been fully briefed by both parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

Facts

The court, as it must, "examine[s] the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

Plaintiff was hired by RxAmerica beginning in 2004 and remained with the company following a 2008 acquisition by CVS Caremark Corporation ("CVS"). First Amended Complaint ("Compl.") ¶¶8-9. At the time of the acquisition, CVS retained Plaintiff as Senior Manager over Software Development. *Id*. ¶10. A plan was negotiated to pay severance benefits to former RxAmerica employees who might be laid off due to the acquisition—the CVS Health Severance Plan for Non-Store Employees ("Severance Plan"). *Id.* ¶11. Pursuant to the Severance Plan, if a director-level employee were to be laid off, he or she would receive a severance payment equivalent to 39 weeks of salary. *Id.* The company's representations regarding severance pay were one of the major reasons Plaintiff decided to stay with CVS following the acquisition. *Id.*

In 2009, Plaintiff was promoted to Director of IT. *Id.* ¶ 12. In 2010, Plaintiff received a merit raise and stock options from the company. *Id.* ¶13. CVS later transitioned away from issuing stock options to employees and began issuing Restricted Stock Units ("RSUs") (owned when vested) to employees. *Id.* ¶ 14. Thereafter, at the end of each calendar year, CVS gave Plaintiff a merit increase and additional stock options or RSUs. *Id.* ¶ 15.

Although the language in the various stock option and stock unit agreements varies slightly, with respect to the issue of continued vesting of RSUs upon termination of employment without cause, the agreements all contain similar language. Each agreement provides that vesting of the RSUs shall continue through the end of the "severance period" that is "set forth" or "specified" in the "agreement providing for severance pay." Dkt. No. 46-1—46-5.

On September 2, 2015, Plaintiff was notified that he would be laid off in 60 days. Compl. ¶ 26. Plaintiff was given the choice of being laid off and taking a severance payout or seeking further employment opportunities within the company. *Id.* At the time of the notice, Plaintiff, as

a Director, was eligible for a severance payout of 39 weeks of pay, pursuant to the Severance Plan. Dkt. No. 46-6. Plaintiff also had various RSUs that were scheduled to vest in April 2016. *Id.* ¶¶ 29-31.

Plaintiff decided to take the severance payout. Plaintiff executed a Confidential Separation Agreement ("Separation Agreement") with the company on November 4, 2015. Dkt. No. 46-7. The Separation Agreement states that Plaintiff will be provided with the severance and other benefits set forth in the "Addendum to Confidential Separation Agreement." *Id.* The Addendum provides that Plaintiff will receive a specific amount of severance payment, "representing 39 weeks of base salary subject to all voluntary and required withholdings." *Id.* The Separation Agreement does not refer to or provide a definition of any "Severance Period." *Id.*

On December 11, 2015, CVS paid Plaintiff 39 weeks of severance pay in a lump sum, pursuant to the Severance Plan. Compl. ¶36. The Severance Plan provides that "[t]he determination of whether Severance Pay is payable under the Plan, and the form and amount of such pay, shall be made in the sole discretion of the Plan Administrator." Dkt. No. 46-6. The Severance Plan further provides that "with respect to RxAmerica Legacy Employees [like Plaintiff], Severance Pay shall be paid in a single lump sum." *Id.* The Severance Plan defines "Severance Pay" as "the pay an Eligible Employee is eligible to receive under Subsection (b) of Section 2.1 of the Plan upon his or her Involuntary Termination" (39 weeks of pay in Plaintiff's case.) *Id.* The Severance Plan defines "Severance Period" as "the period of time on which the calculation of Severance Pay is based." *Id.* The Severance Plan is the only relevant document to include a definition for "Severance Period."

On December 15, 2015, Plaintiff received an email from ETrade indicating that his interest in the CVS stock options and RSUs which would have vested in April 2016 had been cancelled. Compl. ¶39. After contacting the company, Plaintiff was told to contact the Plan Administrator regarding the issues of severance period and continued vesting of options and RSUs after his termination. *Id.* ¶47. On January 8, 2016, Plaintiff sent a letter to the Plan Administrator stating his position that his RSUs should have continued to vest for 39 weeks following his separation. Dkt. No. 46-8. On February 4, 2016, the Plan Administrator issued a response to Plaintiff, stating that "after reviewing the terms of [his] Confidential Separation Agreement and the relevant terms and conditions of the Plan . . . both the amount and form of [his] severance pay is in complete conformance with the discretion granted to the Plan Administrator under Section 2.1 (a) of the Plan . . . ." Dkt. No. 46-9. The letter did not address vesting of the RSUs. *Id*.

On February 10, 2016, Plaintiff wrote again to the Plan Administrator. Dkt. No. 46-10. He again stated that he believed that his RSUs should have continued to vest during the 39-week period following his separation. *Id.* The Plan Administrator responded on March 4, 2016. Dkt. No. 46-11. The Plan Administrator reasoned:

> Although the amount of your lump sum severance payment granted to you under the Plan was determined under a formula taking into account your weekly base salary rate multiplied by 39 weeks, you did not have a severance period and no severance period is specified in the agreement providing for your severance pay. In other words, you were paid an enhanced severance amount equal to 39 weeks of salary, plus an additional amount for your full COBRA cost, in a lump sum up front rather than in periodic installments over a severance period of 39 weeks. Accordingly, your awards were properly cancelled to the extent not vested as of your employment termination date. *Id.*

4

On November 7, 2016, Plaintiff filed this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.*, seeking a ruling that his RSUs should have continued to vest for the 39 weeks following the termination of his employment.

<u>Discussion</u>

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must examine the factual record in the light most favorable to the non-moving party—Plaintiff here. *Applied Genetics Int'l, Inc.*, 912 F.2d at 1241.

In a case governed by ERISA, when a plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the Court examines a challenge to the administrator's decision under an arbitrary and capricious standard based on a review of the administrative record. *Firestone*, 489 U.S. 101, 155 (1989); *Gilbertson v. Allied Signal, Inc.* 328 F.3d 625, 630 (10th Cir. 2003); *Holcomb v. Unum Life Ins. Co. of America,* 578 F.3d 1187, 1192 (10th Cir. 2009); *Sandoval v. Aetna Life and Cas. Ins. Co.,* 967 F.2d 377, 380 (10th Cir. 1992). When reviewing under the arbitrary and capricious standard, the plan administrator's "decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary or capricious." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1990) (citations omitted.)

With respect to his first cause of action, Plaintiff does not seem to dispute Defendants' assertion that it is duplicative of his second cause of action and that his claim is properly pursued under § 1132 (a)(1)(B) of ERISA. Accordingly, the first cause of action is dismissed.

With respect to Plaintiff's second cause of action, the court finds a genuine issue of material fact as to whether the Plan Administrator abused his discretion in failing to consider the definition of "Severance Period" found in the Severance Plan—the only relevant document that defines the term. Section 2.1(b) of the Severance Plan sets forth Plaintiff's right to receive 39 weeks of severance pay upon his involuntary termination. Dkt. No. 46-6. The Agreements governing the RSUs provide that the RSUs shall continue to vest through the end of the "severance period" that is "set forth" or "specified" in the "agreement providing for severance pay." Dkt. No. 46-1—46-5. Plaintiff communicated to the Plan Administrator that he had been informed by a company representative that his RSUs would continue to vest during the 39 weeks following his separation, and that those representations played a major role in his decision to accept a severance package. Dkt. No. 46-8.

In responding to Plaintiff, the Plan Administrator stated that Plaintiff "did not have a severance period and no severance period is specified in the agreement providing for your severance pay" (presumably referring to the Separation Agreement). Dkt. No. 46-11. The Administrator provided no rationale for his determination that the Separation Agreement, and not the Severance Plan, was the agreement providing for Severance Pay. The Administrator also failed to provide any analysis or consideration of the definition of "Severance Period" in the Severance Plan. Under these circumstances, the court finds a material question of fact as to whether the Administrator's decision was arbitrary and capricious.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is DENIED.

DATED this 6th day of August, 2018.

       BY THE COURT:

       _____
       Dee Benson
       United States District Judge